UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                    Case No.  2:16-cr-6
                                                  HON.  PAUL L. MALONEY

SPENCER TROY WARD,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

On April 14, 2017, Defendant pled guilty to Count 4 of the Third Superseding Indictment—conspiracy to manufacture, distribute, and possess with intent to distribute marijuana plants and marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vii), 841(b)(1)(C), and 846.  The Government now seeks (1) an order of forfeiture for a money judgment in the sum of at least $475,254.30 (ECF No. 273); and (2) a preliminary order of forfeiture for real property located at 14747 N. Paynesville Rd. Bruce Crossing, Michigan ("the Paynesville lot") (ECF No. 271).[1]  The Court has referred the Government's motions to the undersigned pursuant to 28 U.S.C. 636(b)(1)(B).  On July 24, 2017, the undersigned held a forfeiture hearing in accordance with Fed. R. Crim. P. 32.2(b)(1)(B).  For the reasons stated below, the undersigned recommends that the Court grant the Government's motions.

---

[1] In Forfeiture Allegation 1 of the Third Superseding Indictment, the Government originally sought three different properties owned by Defendant and a money judgment.  (PageID.732-735.)  However, the Government is now only seeking forfeiture of the Paynesville lot and a money judgment.

At the forfeiture hearing, Special Agent Sarah Hill and Byron Adams testified. The evidence established that Defendant was the leader of a large marijuana conspiracy in the Upper Peninsula of Michigan. The conspiracy began in October 2014 and lasted until February 18, 2016.

Defendant grew the marijuana on the Paynesville lot. On February 18, 2016, law enforcement officers executed a search warrant on the Paynesville lot. During the search, the officers discovered a storage building, an indoor growing facility, and a greenhouse. In the storage building, the officers found 100 pounds of processed marijuana, which was being stored in 5 gallon barrels. Each barrel had a label identifying the strain of marijuana, such as "urban poison" or "skunk." In the large indoor growing facility, the officers recovered 186 marijuana plants with root structures. At the time of the search, the officers did not find any marijuana in the greenhouse. However, the Government later obtained a video that depicted marijuana being grown in the greenhouse.

Defendant sold the marijuana that he grew on the Paynesville lot at three different storefronts. The storefronts went by the name "Upper Peninsula Caregivers Association," and were located in Watersmeet, Iron River, and Marquette. The three storefronts operated similarly—the marijuana was displayed in glass mason jars; the price per ounce was listed at $250; and the sales proceeds were secured in similar safes at the end of the day. In addition, the storefronts sold the same strains of marijuana, which were also the same strains found in the storage building on the Paynesville lot. Similar to the Paynesville lot, officers executed search warrants at each storefront on February 18, 2016. During the searches, officers seized daily sales logs at each storefront. According to the sales logs, the Iron River storefront sold 39.19 pounds of marijuana for $148,925.00 between April 21, 2015, and February 18, 2016; the Marquette

storefront sold 2.14 pounds of marijuana for $7,767.50 between November 18, 2015, and January 31, 2016; and the Watersmeet storefront sold 82.07 pounds of marijuana for $318,561.80 between January 1, 2015, and February 18, 2016. In total, the three storefronts sold 123.4 pounds of marijuana for $475,254.30.[2]

Federal Rule of Criminal Procedure 32.2 outlines the procedures governing criminal forfeiture. "As soon as practical after a verdict or finding of guilty, or after a plea of guilty or nolo contendere is accepted, on any count in an indictment or information regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute." Fed. R. Crim. P. 32.2(b)(1)(A). "If the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense." *Id.* "If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay." *Id.* "If the court finds that property is subject to forfeiture, it must promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment, directing the forfeiture of specific property, and directing the forfeiture of any substitute property if the government has met the statutory criteria." Fed. R. Crim. P. 32.2(b)(2)(A).

Here, the Government has moved for forfeiture pursuant to 21 U.S.C. § 853, which provides in pertinent part:

> Any person convicted of a violation of this subchapter or subchapter II of this chapter punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law—

---

[2] The Government summarized the daily sales logs recovered from each storefront. The Court previously admitted these summaries as evidence. (See ECF No. 230 & 235).

> (1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;
>
> (2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation . . . .

21 U.S.C. § 853(a). Property is defined as "real property, including things growing on, affixed to, and found in land; and . . . tangible and intangible personal property, including rights, privileges, interests, claims, and securities." 21 U.S.C. § 853(b). If the government establishes that the property subjected to forfeiture under § 853(a) cannot be located upon the exercise of due diligence, the court shall order the forfeiture of any other property of the defendant not to exceed the value of the property subjected to forfeiture under § 853(a). 21 U.S.C. § 853(p). The government has the burden to prove that the property is subject to criminal forfeiture by a preponderance of the evidence. *United States v. Evers*, 669 F.3d 645, 660 (6th Cir. 2012).

In its first motion, the Government seeks an order of forfeiture for a money judgment of $475,254.30 under § 853(a)(1). The amount sought represents the gross proceeds of the marijuana conspiracy as calculated by the daily sales logs seized at the three storefronts. Therefore, the undersigned must determine whether Defendant "obtained, directly or indirectly" this amount of money as a result of the crime. 21 U.S.C. § 853(a)(1).

In *Honeycutt v. United States*, 137 S.Ct. 1626, 1632 (2017), the Supreme Court analyzed the meaning of the phrase "obtained, directly or indirectly" in § 853(a)(1). In that case, the issue was "whether, under § 853, a defendant may be held jointly and severally liable for property that his co-conspirator derived from the crime but that the defendant himself did not acquire." *Id.* at 1630. The defendant and his brother were part of a conspiracy to sell Polar Pure, a drug used to manufacture meth, out of a storefront. *Id.* The government sought forfeiture of

the net profits from the sales of the Polar Pure—$269,751.98. *Id.* The defendant's brother eventually pled guilty and agreed to forfeit $200,000. *Id.* The defendant went to trial and was subsequently convicted of several drug charges including the drug conspiracy. *Id.* Following the defendant's conviction, the government sought forfeiture against the defendant in the amount of the outstanding net profits derived from the conspiracy, which was $69,751.98. *Id.* at 1631. Although the defendant had no "controlling interest in the store" and "did not benefit personally," the Sixth Circuit held that the brothers were jointly and severally liable for any proceeds of the conspiracy. *Id.* (citing *United States v. Honeycutt*, 816 F.3d 362, 380 (6th Cir. 2016)).

In reversing the Sixth Circuit, the Supreme Court determined that joint and several liability is contrary to the plain language of § 853. *Id.* at 1632-34. The Court found that the language of the statute limits forfeiture to property that was "obtained" by the individual, and "neither the dictionary definition nor the common usage of the word 'obtain' supports the conclusion that an individual 'obtains' property that was acquired by someone else." *Id.* at 1632. The Court stated:

> Section 853(a)(1) further provides that the forfeitable property may be "obtained, directly or indirectly." The adverbs "directly" and "indirectly" modify—but do not erase—the verb "obtain." In other words, these adverbs refer to how a defendant obtains the property; they do not negate the requirement that he obtain it at all. For instance, the marijuana mastermind might receive payments directly from drug purchasers, or he might arrange to have drug purchasers pay an intermediary such as the college student. In all instances, he ultimately "obtains" the property—whether "directly or indirectly."

*Id.* at 1633. Ultimately, the Court concluded that the individual conspirator must have "acquired" or "personally benefit[ed]" from the forfeitable property. *Id.* at 1635.

In this case, Defendant is closely akin to the hypothetical marijuana mastermind described in *Honeycutt*. Defendant was without question in charge of this conspiracy. He grew the marijuana on his property and sold it through his storefronts. He controlled the employees at the storefronts and made all the hiring and firing decisions. He was in charge of maintaining the growing facility on his property—including recruiting and paying contractors to trim and harvest the marijuana plants. For example, Byron Adams testified that Defendant hired him in October 2015 to help harvest the marijuana. Mr. Adams also testified that Defendant paid him $10 per hour. The daily sales log books from the storefronts established that the gross proceeds of the marijuana sales was $475,254.30. Although the Government did not establish that Defendant directly obtained the $475,254.30, the statute does not require the Government to do so. In the opinion of the undersigned, the Government proved by the preponderance of the evidence that Defendant indirectly obtained the $475,254.30 in gross proceeds.

Defendant argues that the Court should not calculate the forfeiture amount based on gross proceeds and, instead, the amount should be calculated based on net profit. Thus, Defendant contends that the Court should take into account the actual expenses of producing and selling the marijuana, such as "wages, rent, water, electricity, soil, fertilizer, tools, transportation, etc" and employee theft. In *United States v. Logan*, 542 F. App'x 484, 498 (6th Cir. 2013), the Sixth Circuit determined that the "district court was correct in its holding that gross proceeds should determine the baseline for calculating the amount of the forfeiture." As Defendant correctly points out, the government in *Honeycutt* sought forfeiture based on net profits. However, *Honeycutt* did not address whether the forfeiture amount should be calculated based on net profits or gross proceeds. Moreover, *Honeycutt* does not suggest that calculating forfeiture based on gross proceeds is improper. In the opinion of the undersigned, the amount of forfeiture

in this case is properly calculated based on gross proceeds. Therefore, the undersigned recommends that the Court enter an order of forfeiture for a money judgment in the sum of $475,254.30.

At the conclusion of the forfeiture hearing, the Government informed the undersigned that it was also seeking an order authorizing the forfeiture of substitute assets pursuant to 21 U.S.C. § 853(p)(A)(1). Forfeiture Allegation I in the Third Superseding Indictment gave proper notice that the Government would pursue substitute assets if it was unable to locate the property subjected to forfeiture. During the hearing, Sarah Hill testified that the Government has only been able to locate approximately $10,694.36, which was seized during the search warrants on February 18, 2016. The Government was able to locate Defendant's bank accounts at the State Bank of Ewen and the Consumer Credit Union, but the accounts did not contain substantial assets. Therefore, in the opinion of the undersigned, the order of forfeiture for a money judgment in the sum of $475,254.30 should include a provision permitting the Government to pursue the forfeiture of substituted assets in an amount not to exceed the $475,254.30 money judgment.

In its second motion, the Government seeks a preliminary order of forfeiture for real property located at the Paynesville lot under to § 853(a)(2). Thus, the undersigned must determine whether the property was "used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of" the crime.

This case has an additional wrinkle because the Paynesville lot is made up of three different parcels. Parcel I is identified as N ½ of SE ¼ of NE ¼. Parcel II is identified as S ½ of N ½ of N ½ of SW ¼. Parcel III is identified as SW ¼ of NE ¼. Parcel I and Parcel III are located in Haight Township and are taxed as one property. Parcel II is located in Interior

Township and is taxed separately. Government Exhibit BC-24 depicts the location of the parcels:



In the opinion of the undersigned, Parcels I and III were "used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of" the crime. The storage building, indoor growing facility, and greenhouse were all located on Parcel III. Parcel I, which contained a residence, is directly adjacent to Parcel III and physically concealed the storage building, indoor growing facility, and greenhouse from the road. Moreover, a driveway located on Parcel I was used by the marijuana trimmers to access Parcel III.

However, both parties agree that Parcel II was not "used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of" the crime. Therefore, the

undersigned must determine whether the Paynesville lot is considered one property or three separate properties under § 853.

To determine whether multiple tracts of real property are treated as one property under § 853, the Sixth Circuit has determined that the courts must look to "the instruments and documents that created the defendant's interest in the property." *United States v. Smith*, 966 F.2d 1045, 1054 (6th Cir. 1992). In *Smith*, the government sought forfeiture of the defendant's farm, which he used to grow marijuana. *Id.* at 1048-49. The farm was made up of four separate tracts. *Id.* at 1054. The four tracts were conveyed to the defendant and his wife through four separate deeds over a six-year period. *Id.* The four tracts were also taxed separately. *Id.* When the defendant and his wife divorced several years later, his wife conveyed her interest in all four tracts to the defendant by virtue of one quitclaim deed. *Id.* Based on the single quitclaim deed that conveyed an interest in all four tracts to the defendant, the government argued that the four tracts should be construed as one property. *Id.* The Sixth Circuit disagreed because under Tennessee state law governing tenancy by the entirety, the quitclaim deed did not actually create the defendant's interest. *Id.* at 1054-55. Instead, the Sixth Circuit concluded: "Because the four separate deeds actually created [the defendant's] interest in the land that now constitutes his farm, we find no error in the district court's decision to treat each tract separately for forfeiture purposes." *Id.* at 1055.

Here, Defendant obtained his interest in the three parcels of land by virtue of thirteen quitclaim deeds from the thirteen previous owners. Defendant recorded all thirteen of the deeds in 1992. Unlike the facts in *Smith,* where four separate deeds conveyed four separate tracts, in this case, each of the thirteen quitclaim deeds identified and conveyed an interest in all three of the parcels. In other words, the deeds that created the defendant's interest in the

-9-

property treated the three parcels as one property. Therefore, in the opinion of the undersigned, the three parcels that make up the Paynesville lot should be treated as one property for forfeiture under § 853.[3] Because part of the Paynesville lot was "used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of" the crime, the entire lot is subject to forfeiture under § 853(a)(2). *See Smith*, 966 F.2d at 1053 ("Section 853(a)(2) requires forfeiture of all of the 'property' that a defendant uses or intends to use to commit or facilitate the commission of an offense, even if the defendant uses only part of that 'property' for that purpose.").

Accordingly, the undersigned recommends that the Court grant the Government's motion and enter an order of forfeiture for a money judgment in the sum of $475,254.30. The order should authorize the Government to pursue the forfeiture of substituted assets in an amount not to exceed the $475,254.30 money judgment under 21 U.S.C. § 853(p).

In addition, the undersigned recommends that the Court grant the Government's motion and enter a preliminary order of forfeiture for real property located at 14747 N. Paynesville Rd. Bruce Crossing, Michigan.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within 14 days of receipt of this Report and Recommendation. W.D. Mich. LCrimR 57.2(e); 28 U.S.C. § 636(b)(1)(C); Fed. R.

---

[3] Similar to the facts in *Smith,* Defendant's ex-wife conveyed her interest in the three parcels to Defendant by virtue of one quitclaim deed in 2007. It is unclear whether Defendant and his ex-wife held the property in joint tenancy or tenancy by the entirety. Michigan law presumes that a deed conveying real property to a husband and wife is held as tenancy by the entirety unless the deed expressly provides otherwise. *See* Mich. Comp. Laws § 554.45; *Hoyt v. Winstanley*, 191 N.W. 213, 214 (Mich. 1922); *Walters v. Leech*, 761 N.W.2d 143, 146 (Mich. Ct. App. 2008). Here, the thirteen quitclaim deeds may overcome that presumption because the deeds convey the property, "not in Tenancy in Common, but in Joint Tenancy." However, the undersigned does not need to decide this issue. Even assuming that Defendant's interest in the property was created by virtue of his ex-wife's quitclaim deed, the quitclaim deed identified all three parcels of land and the outcome would be same.

Civ. P. 72(b); W.D. Mich. LCivR 72.3. Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: August 24, 2017

        /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE